Abraham Teitelbaum v. Commissioner.
Teitelbaum v. Commissioner
Docket Nos. 88322, 89805.
United States Tax Court
T.C. Memo 1964-141; 1964 Tax Ct. Memo LEXIS 194; 23 T.C.M. (CCH) 847; T.C.M. (RIA) 64141; May 19, 1964
Abraham Teitelbaum, pro se, 609 N. Hillcrest Rd., Beverly Hills, Calif. George G. Young and Kenneth B. Samuels, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: In these consolidated cases respondent originally determined deficiencies in petitioner's income tax and additions to tax for the years and in the amounts as follows: Addition to Tax
I.R.C. 1939
Docket No.
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(1)(A)
88322
1952
$21,149.47
$10,574.74
$1,903.46
88322
1953
52,539.05
26,269.53
4,728.53
88322
1954
9,847.84
88322
1955
3,722.35
89805
1956
1,460.76
*195 The respondent has conceded in the stipulation of facts that the deficiencies with respect to the years 1952 and 1953 were not due to fraud and that the petitioner is not liable for the fraud penalties for those years. In his brief the respondent has made certain additional concessions. In an amendment to his answer in Docket No. 88322 filed on April 11, 1962, respondent made certain modifications in his original determination, as set forth in the notice of deficiency, which resulted in a net increase in the deficiency for the year 1952 and decreases in deficiencies for the years 1953 through 1955, as follows: Teitelbaum and Melnick Returns
1952
Increases to income: Long-term capital gain
$343,607.26
Decreases to income: Real estate taxes
14,524.26
Interest
914.95
Social Security taxes
546.27
Utility taxes
43.83
Trustee fees
140.00
Receipts from Chicago Restau-
rant, Assn.
10,000.00
Other deductions disallowed
18,000.00
1953
Decreases to income: Other deductions disallowed
$ 16,496.85
1954
Decreases to income: Other deductions disallowed
$ 2,618.37
Interest (Irving Jacobs & Com-
pany)
275.04
1955
Decreases to income: Other deductions disallowed
$ 1,000.00
*196 In a second amendment to his answer filed in Docket No. 88322 on October 9, 1963, respondent claimed an increased deficiency for the year 1952 by disallowing an interest deduction claimed by petitioner on the Teitelbaum and Melnick return for that year. Of the $59,213.41 claimed on the Teitelbaum and Melnick return for 1952, respondent alleges that $30,525.85 was not a proper deduction of the petitioner. In an amendment to the petition in Docket No. 88322 filed at the hearing the petitioner claimed an additional loss deduction for the year 1952 with respect to advances made to Radio Station WMOR, a corporation. The issues for decision are: (1) whether the assessment of deficiencies for the years 1952 through 1956 is barred by the statute of limitations; (2) whether a partnership existed between petitioner and Esther Melnick Teitelbaum during the years 1952 through 1956; (3) whether petitioner is entitled to any deduction on his returns for the years 1952 through 1956 with respect to losses allegedly sustained in the operation of a date farm; (4) whether petitioner is entitled to any deduction on his returns for the years 1952 and 1953 with respect to alleged theft losses; (5) *197 whether petitioner understated gross receipts from his law practice for the years 1952 and 1954 in the amounts of $3,077.35 and $6,250; (6) whether petitioner understated by $354,805.85 his net long-term capital gain from the sale of his one-half interest in the Teitelbaum and Simon partnership (Fine Arts Building); (7) whether petitioner is entitled to any deduction for the year 1952 for payments of interest and accrued interest on income tax deficiencies of his former wife, Esther Melnick Teitelbaum, for years prior to 1952; (8) whether petitioner understated his distributive share of the ordinary net income of the Teitelbaum and Simon partnership for the year 1952 in the amount of $39,112.46; (9) whether petitioner is entitled to any deduction for the year 1952 with respect to advances allegedly made to Radio Station WMOR; (10) whether petitioner is entitled to certain alleged professional expenses and other deductions claimed on purported partnership returns of Teitelbaum and Melnick for the years 1952 through 1955; and (11) whether petitioner is liable for the penalty provided by section 294(d)(1)(A), Internal Revenue Code of 1939, for failure to file a declaration of estimated *198 tax for each of the years 1952, 1953, and 1954. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. General Findings Abraham Teitelbaum (hereinafter called petitioner) is an attorney who resided in Chicago, Illinois, during the years 1952 through 1956. He filed his individual income tax returns for those years with the district director of internal revenue at Chicago. Petitioner used a cash basis calendar year method of reporting income. Petitioner and the respondent executed a series of consent agreements (Forms 872) with respect to each of the years 1952, 1953, 1954, and 1955 extending to June 30, 1960, the time within which the respondent might assess additional income taxes for such years. The statutory notice of deficiency covering petitioner's taxable years 1952 through 1955 was mailed to petitioner on June 27, 1960. Petitioner prepared and filed with the director of internal revenue, Chicago, Illinois, U.S. Partnership Returns of Income (Forms 1065) for the years 1952 through 1956 under the name of Teitelbaum and Melnick. During the years 1949, 1950, 1951, and *199 1952 petitioner was a member of a partnership operating under the name of Teitelbaum and Simon. This partnership filed partnership returns with the director of internal revenue, Chicago, Illinois, for such years. Petitioner reported on his individual income tax returns for the years 1952 through 1956 net or taxable income (loss) as follows: Net or Taxable
Year
Income (Loss)
1952
[95,632.65)
1953
(81,106.67)
1954
None
1955
None
1956
1,007.61
Petitioner filed U.S. Partnership Returns of Income for the years 1952 through 1956 under the name of Teitelbaum and Melnick reporting thereon ordinary net income (or loss) as follows: Ordinary Net
Year
Income (or Loss)
1952
[191,265.31)
1953
(162,213.34)
1954
235.20
1955
(1,969.15)
1956
13,937.72
In the statutory notices of deficiency for the years 1952 through 1956, respondent adjusted petitioner's net or taxable income for such years by including the entire ordinary net income and net long-term capital gain of the purported Teitelbaum and Melnick partnership as petitioner's individual income, such adjustments being based upon the determination that a partnership did not exist *200 between petitioner and his former wife, Esther Melnick Teitelbaum, during the years 1952 through 1956. In the statutory notice of deficiency for the year 1952, respondent determined petitioner's net income as follows: Net income reported - Loss
[95,632.65)
A. Increase of net long-term capital gain
1. From sale of 1/2 interest in Fine Arts Building
32,016.02
2. Less: Loss on junior mortgages
(20,817.43)
$ 11,198.59
50% thereof
$ 5,599.30
B. Teitelbaum and Melnick return directly
Net income per return (petitioner's share) - Loss
[95,632.65)
1. Professional receipts
a. Chicago Restaurant Association
$10,000.00
b. H. Johnson Restaurant
2,240.00
c. Alonzi Furniture Co.
837.35
13,077.35
2. Farm loss disallowed
$ 21,898.39
3. Casualty loss disallowed
50,000.00
4. General deductions
141 items claimed
$141,988.50
29 items allowed
8,383.54
112 items disallowed
133,604.96
$122,948.05
5. Less: Additional taxes
$11,483.95
Additional interest
1,189.76
Ordinary income reported from sale
of 1/2 interest in Fine Arts Building
13,381.74
$ 26,055.45
Total
$ 96,892.60
C. Teitelbaum and Simon partnership
6-A. Interest
$ 2,362.50
6-B. Taxes
77,399.12
$ 79,761.62
6-C. Less: Additional depreciation
1,536.70
Net adjustments to Teitelbaum and Simon
$ 78,224.92
One-half to petitioner
39,112.46
Total of A, B, and C above
$141,604.36
Net loss reported
95,632.65
Adjusted gross income
$ 45,971.70
Less: Contributions
2,705.00
Net income corrected
$ 43,266.70
*201 In the statutory notice of deficiency for the year 1953, respondent determined petitioner's net income as follows: Net income reported - Loss
[81,106.67)
A. Teitelbaum and Melnick return directly
Net income per return (petitioner's share) - Loss
[81,106.67)
1. Farm loss disallowed
$ 20,000.00
2. Casualty loss disallowed
3,000.00
3. General deductions
222,341.27
$164,234.60
4. Less: Professional receipts (decrease)
270.00
Total
$163,964.60
Total as above
$163,964.60
Net loss reported
81,106.67
Adjusted gross income
$ 82,857.93
Less: Short-term capital loss
$287.09
Contributions
625.00
912.09
Net income corrected
$ 81,945.84
In the statutory notice of deficiency for the year 1954, respondent determined petitioner's taxable income as follows: Taxable income reported
None
A. Teitelbaum and Melnick return directly
Net income per return
$ 235.20
1. Professional receipts
a. Chicago Restaurant Association
6,250.00
2. General deductions
22,027.66
Total
$28,512.85
Total as above
$28,512.86
Taxable income reported
None
Adjusted gross income
$28,512.86
Less: Contributions
$1,025.00
Exemptions
3,000.00
4,025.00
Taxable income corrected
$24,487.86
*202 In the statutory notice of deficiency for the year 1955, respondent determined petitioner's taxable income as follows: Taxable income reported
None
A. Teitelbaum and Melnick return directly
Ordinary income per return - Loss
[1,969.15)
1. Professional receipts
a. Hillman Periodicals, Inc.
2,500.00
2. General deductions
15,618.79
3. Mathematical error
100.00
Total
$16,249.64
Total as above
$16,249.64
Taxable income reported
None
Adjusted gross income
16,249.64
Less: Standard deduction
$ 500.00
Exemptions
3,000.00
3,500.00
Taxable income corrected
$12,749.64
In the statutory notice of deficiency for the year 1956, respondent adjusted petitioner's taxable income by an increase in the amount of $6,000 representing the purported share of Teitelbaum and Melnick partnership income distributable to Esther Melnick Teitelbaum. Facts Relating to Purported Teitelbaum and Melnick Partnership 1952-1956 In 1932 petitioner married Esther Melnick Teitelbaum. The marriage was terminated by divorce on March 21, 1952. In late March 1952 petitioner married his present wife, Shyrl Teitelbaum. During the years 1944 to 1956, inclusive, *203 petitioner resided in Chicago, Illinois. Esther Melnick resided in Chicago, Illinois, until approximately the latter part of 1947, when she moved to California, where she resided continuously thereafter. In 1949 petitioner became permanently separated from Esther Melnick. In the early part of 1948 petitioner and Melnick purchased a date ranch near Indio, California. Esther Melnick used the date ranch as her personal residence, where she lived with her four minor children, from the time it was acquired. Esther Melnick did not engage in the practice of law with the petitioner during the years 1952 through 1956. Petitioner and Esther Melnick did not operate the California date ranch as partners during the years 1952 through 1956. No partnership existed between petitioner and Esther Melnick during the years 1952 through 1956. Facts Relating to Date Ranch Losses Claimed for 1952-1953 In 1948 petitioner and Esther Melnick purchased the California date ranch for $127,372.09. Of the total purchase price, $21,000 was allocable to land, $17,500 to date trees and related improvements, and $88,872.09 to a residence and related improvements. The purchased property consisted of 10 *204 to 11 acres on which was located a main house with a large high-ceilinged living room about 45 feet by 60 feet which contained two fireplaces, a guest house, swimming pool, pool house, servants' house, caretakers' house, Mexican house for the farm laborers, 300 date trees covering about 6 or 7 acres, and about 2 1/2 acres of grapefruit trees. The date ranch operated at a loss in 1948 and all subsequent years in which it was owned by petitioner and Esther Melnick. The operating losses attributable to the date ranch for the years 1949 to 1953, inclusive, in the amounts of $15,511.67, $21,730.50, $21,898.39, $21,898.39, and $20,000, respectively, were claimed as losses from its operation on returns filed for those years. The date ranch was not acquired or operated as a business, nor with the intention of making a profit, during the years 1952 and 1953. Facts Relating to Theft Losses Claimed for 1952 and 1953 On the 1952 Teitelbaum and Melnick return under item 18, page 1, petitioner claimed a deduction for "April 16, 1952 Armed Burglary - $50,000." No further information relative to this item is shown on the return. On April 15, 1952, the residence at 5352 La Gorce Drive, *205 Miami Beach, Florida, was reported by his wife, Shyrl Teitelbaum as having been burglarized. The matter was investigated by the Police Department of the City of Miami Beach. A letter to petitioner dated April 16, 1959, from the Office of Chief of Police, City of Miami Beach, states, in part, as follows: At that time, as reported to Detectives Frederick and Dworkin, the only known articles that were missing from your home were two mink fur pieces. Subsequent to the robbery and after talking to you, these detectives reported that you refused to tell them how much, or if any, cash was taken in this robbery. They also stated that the camera equipment that you mention was checked out and none were reported stolen. There was also no report of any jewelry taken. You state in your letter that Lt. Siegendorf of this Department knew of this loss. However, this knowledge never came to the attention of the investigating detectives. Detectives Frederick and Dworkin also stated that they broke off this investigation because of your request, and that you intended to find out who perpetrated this robbery through your Chicago connections on your return to that city. Neither the cost nor fair market *206 value of the two mink coats was proved by petitioner. The claimed deduction of $50,000 was disallowed in its entirety by respondent in the notice of deficiency. On the 1953 Teitelbaum and Melnick return under item 18, page 1, petitioner claimed a deduction for burglary loss of $3,000. On February 23, 1953, the residence at 6911 Euclid Street in Chicago was reported as burglarized. The Offense Report prepared by the Department of Police, City of Chicago, dated February 23, 1953, reads, in part, as follows: Person or persons unknown gained entrance to complainants apartment by breaking glass in rear window near lock entered and took the following. 1 - Clock enclosed in glass case 1 - Set of flat silverware 1 - pair of silver candel [candle] sticks 1 - Silver coffee server accessorys [accessories] 1 - 16mm Eastman movie camera 1 - Ladies' yellow mesh bag Further loss and values to follow. No evidence was offered as to the cost or other basis of the items stolen. Respondent disallowed the entire $3,000 as a deduction for theft loss. Facts Relating to Sale of Petitioner's Interest in Fine Arts Building During the years 1949 through 1952 petitioner and Paul *207 R. Simon were members of a partnership operating under the name of Teitelbaum and Simon. The principal asset of the partnership consisted of property known as the Fine Arts Building located in Chicago, Illinois. On May 31, 1944, the Tyted Co. (hereinafter called Tyted), was incorporated under the laws of the State of Illinois. Its total authorized stock consisted of 1,000 shares of single class stock, with a par value of $50 per share. On June 2, 1944, Tyted issued 1,000 shares of its capital stock. Petitioner and Esther Melnick, then petitioner's wife, received 999 shares as joint tenants and Josephine Melnick received the remaining share. Petitioner and Esther Melnick paid no consideration to Tyted for the stock they received. On April 24, 1945, Tyted acquired title to certain property located at 408 to 426 South Michigan Avenue, Chicago, Illinois, which property included a building commonly known as the Fine Arts Building and a portion of buildings commonly known as the Auditorium Hotel and Auditorium Theatre, by special warranty deed from the Northwestern Mutual Life Insurance Co. of Wisconsin. The purchase of the Fine Arts Building and Auditorium properties grew out of *208 an offer made by petitioner on March 22, 1945, in behalf of himself and Paul R. Simon to purchase the properties for $750,000. The $750,000 purchase price consisted of $150,000 cash and a promissory note of Tyted Co., secured by a mortgage on the property sold in the principal amount of $600,000. Although record title to the Fine Arts Building and Auditorium properties was in the name of Tyted Co., Tyted's actual interest was an undivided one-half interest and Tyted was entitled to one-half of the become from such properties. The other one-half interest was beneficially owned by either Paul R. Simon or Bessie L. Simon. On May 1, 1945, Tyted conveyed title to the Fine Arts Building and Auditorium properties to the La Salle National Bank, Chicago, Illinois, as trustee under Trust No. 10693. The trust agreement provided that the beneficial interest in the properties was in Tyted, and the power of direction was vested in petitioner and Esther Melnick. Tyted claimed depreciation on each of its Federal income tax returns for the years 1945, 1946, and 1947 in the amount of $25,000 on the Fine Arts Building and Auditorium properties. Depreciation claimed was based on an allocation *209 of $500,000 of the purchase price to the buildings with an estimated future life of 20 years. On February 27, 1947, Tyted sold to Roosevelt College its beneficial interest in the south 52 feet of the Fine Arts Building, which was the Auditorium Hotel and Auditorium Theatre portions, and legal title was conveyed to Roosevelt College by the La Salle National Bank. In connection with the examination of the Federal income tax returns of Tyted for the years 1945, 1946, and 1947, respondent determined that the allocation of the cost of the Fine Arts Building and Auditorium properties to land and buildings and allowable depreciation was as follows: Fine Arts Building and Auditorium
Properties
Purchase price (1945)
$750,000.00
Plus: Real estate taxes for prior
years
22,322.56
Total cost basis
$772,322.56
Cost allocated to land
$392,636.38
Cost allocated to building
379,686.18
$772,322.56
1945
1946
1947
Depreciation
claimed
$25,000.00
$25,000.00
$25,000.00
Depreciation
allowable
8,329.96
13,923.68
10,584.48 The respondent's determination was agreed to by Tyted. Also in connection with the examination of Tyted's returns *210 respondent determined that the cost basis properly allocable to the properties sold to Roosevelt College, adjusted for allowable depreciation, was $293,673.66 which was allocated between land and building as follows: Cost basis of land
$100,176.06
Adjusted basis of building
193,497.60
$293,673.66
On May 1, 1947, pursuant to corporate resolution, Tyted assigned its interest under Trust No. 10693, which purported to be the entire beneficial interest in the Fine Arts Building, as follows: an undivided one-half interest to Bessie L. Simon and an undivided one-half interest to petitioner and Esther Melnick. On June 20, 1950, the La Salle National Bank, Chicago, Illinois, as trustee under Trust No. 10693, pursuant to direction of petitioner and Paul R. Simon, executed a first mortgage real estate note payable to the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, in the principal amount of $700,000. On April 16, 1951, the La Salle National Bank, Chicago, Illinois, as trustee under Trust No. 10693, conveyed title to the Fine Arts Building to the Exchange National Bank of Chicago, Chicago, Illinois, as trustee under Trust No. 2255. Petitioner *211 transferred, by two assignments, his entire interest in the Fine Arts Building to Arnold A. Schwartz effective July 31, 1952. At the time of the sale of petitioner's interest in the Fine Arts Building the property was subject to a mortgage held by the Connecticut Mutual Life Insurance Company, Hartford, Connecticut, such mortgage having a stated outstanding balance of $588,000. Arnold A. Schwartz purchased petitioner's interest in the Fine Arts Building subject to the mortgage having a stated outstanding balance of $588,000 as of July 31, 1952, and continued thereafter to make the mortgage payments. At the time of sale of petitioner's interest in the Fine Arts Building, petitioner's basis in the property was $253,459.72, computed as follows: Cost basis of land
$292,460.32
Adjusted basis of building
214,459.13
$506,919.45
One-half thereof
$253,459.72
The partnership of Teitelbaum and Simon deducted depreciation on the Fine Arts Building for the years 1949, 1950, 1951, and the period January 1, 1952, through July 31, 1952, on the basis of the mortgage as well as the partner's equity in the property. On the 1952 partnership return of Teitelbaum and Melnick *212 petitioner reported gain realized from the sale of his one-half interest in the Fine Arts Building as $13,381.74. The agreed selling price of petitioner's one-half interest in the Fine Arts property was $300,000. In 1955, petitioner and Arnold A. Schwartz were involved in certain litigation in the Circuit Court of Cook County, Chicago, Illinois, concerning payment by Schwartz for petitioner's interest in the Fine Arts property. In connection with this litigation petitioner claimed that Schwartz was indebted to him in the amount of $86,911 as representing the unpaid balance of the agreed selling price of the property. In 1957, after a trial without a jury, the Circuit Court of Cook County found that Schwartz was not indebted to petitioner but that petitioner was in fact indebted to Schwartz in the sum of $35,083. A proration analysis on the sale of petitioner's interest in the Fine Arts Building was prepared by or under the supervision of one Joseph J. Ehrlich, certified public accountant employed by Arnold Schwartz, at or about the time of trial in the Circuit Court of Cook County. This analysis, which was based upon worksheets prepared at the time of sale in 1952, prorated various *213 credits and charges between petitioner and Schwartz as follows: Due A. A.
Due Abraham
Particulars
Gross
Schwartz
Teitelbaum
Sale of Equity of A. Teitelbaum
$300,000.00
Cash in Bank
$ 5,481.79
2,740.89
Petty Cash on Hand
100.00
50.00
Unexpired Insurance
7,313.86
3,656.93
Rents Receivable
4,316.29
2,158.15
Advance - August Wage Paid to J. McKinlock 7-29-52
700.00
350.00
Additional Interest Expense on Delinquent Payment on
Mortgage
1,829.89
$ 914.95
Accrued Real Estate Tax - 2nd Installment 1951
22,967.90
11,483.95
Accrued Real Estate Tax - 7 Months 1952 (Actual)
29,048.53
14,524.26
Excess of Actual Mortgage over Quoted Mortgage
Actual $630,000.00
Quoted 588,000.00
42,000.00
21,000.00
Accounts Payable
12,527.27
6,263.63
Accrued Interest on Mortgage
2,362.50
1,181.25
Accrued Interest on Delinquent Payment - 2nd Quarter
Illinois U.S. Tax - Paid in September, 1952
$ 17.02
$ 8.51
Loan Balance - Picadilly Restaurant
4,700.00
2,350.00
Notes Payable - Commonwealth Edison Co.
57,735.19
28,867.59
Tenants Credit Balances
1,501.01
750.50
Accrued Social Security Taxes
1,092.55
546.27
Accrued Utility Tax
87.67
43.83
Loan Deposit - Oscar Hurwitz
2,500.00
1,250.00
Loan Deposit - Harry Goldstein
3,333.34
1,666.67
Deposit - Chicago Rosenberg Committee July, 1952 - Room
838 - Used 8-17-52
40.00
20.00
Cash Paid to A. Teitelbaum by A. A. Schwartz
262,500.00
9-23-52 - Cash Taken from Rent Receipts Cash Box - Per
J. McKinlock
($ 250.00)
9-3-52 - Check #1007 to A. Teitelbaum
(2,500.00)
9-4-52 - Check #1009 to A. Teitelbaum
(1,000.00)
9-17-52 - Check #1024 to A. Teitelbaum
(1,000.00)
9-17-52 - Check #1025 to A. Teitelbaum
(1,500.00)
9-29-52 - Cash Deposited by A. Teitelbaum
11,500.00
10-3-52 - Bank Debit - Transfer to A. Teitelbaum and Mel-
nick Account - Michigan Ave. National Bank
(5,000.00)
10-3-52 - Bank Debit - Transfer to A. Teitelbaum and Mel-
nick Account - Michigan Ave. National Bank
(5,000.00)
10-7-52 - Check #1033 to Teitelbaum and Melnick
(5,000.00)
10-17-52 - Check #1038 to Teitelbaum and Melnick
(6,000.00)
10-20-52 - Check #1039 to Teitelbaum and Melnick
(1,500.00)
10-15-52 - Cash Taken from Rent Receipts Cash Box - Per
J. McKiniock
( 300.00)
10-31-52 - Credit for Mortgage Payments made by A. Teitel-
baum Personally
15,000.00
11-10-52 - Cash Taken from Rent Receipts Cash Box - Per
J. McKinlock
( 250.00)
11-17-52 - Cash Taken from Rent Receipts Cash Box - Per
J. McKinlock
( 250.00)
12-29-52 - Check #143 to A. Teitelbaum
(5,000.00)
12-12-52 - Cash Deposited by A. Teitelbaum
5,000.00
12-31-52 - Cash Deposited by A. Teitelbaum
12,522.44
7-2-53 - Share of Trustee Expenses as Per A. A. Schwartz
( 140.00)
TOTALS
$353,371.41
$318,288.41
DUE A. A. SCHWARTZ
35,083.00
$353,371.41
$353,371.41
*214 Petitioner realized, after prorations and before reduction for basis, a total of $629,083 on the sale of his interest in the Fine Arts Building, $294,000 of such amount being represented by one-half of the stated outstanding mortgage on the property at the time of sale. Facts Relating to Interest Paid by Petitioner on Income Tax Deficiencies of Esther Melnick Teitelbaum On the 1952 Teitelbaum and Melnick return under item 16 an interest deduction was claimed in the amount of $59,213.41. Of this amount at least $30,525.85 represents interest and accrued interest paid on income tax deficiencies of Esther Melnick Teitelbaum, petitioner's former wife, for the years 1944, 1945, 1946, and 1947. Petitioner did not join with his former wife, Esther Melnick Teitelbaum, in the filing of joint Federal income tax returns for the years 1944, 1945, 1946, and 1947, but instead filed individual income tax returns for those years. The interest deduction claimed by petitioner on the 1952 Teitelbaum and Melnick return was excessive in the amount of $30,525.85. Facts Relating to Radio Station WMOR During the year 1950 the stock of the Metropolitan Radio Corporation of Chicago, Inc. (hereinafter *215 referred to as Metropolitan), which owned and operated station WMOR, an FM radio station, was held by various individuals including Donald F. Kiesau and Daniel L. Toffenetti, officials of the Chicago Restaurant Association. Sometime in 1951 Kiesau, Toffenetti, and others, aware that the corporation was about insolvent, sold their stock to petitioner at about 10 cents on the dollar. Petitioner intended to help Kiesau and Toffenetti by taking the stock off their hands. Petitioner advanced a total of at least $48,289.83 to pay expenses of Metropolitan. Of this amount $20,901.94 was deducted as expenses on Teitelbaum and Melnick partnership returns for 1950 and 1951. On March 19, 1952, a petition to have the corporation adjudicated a bankrupt was filed with the United States District Court for the Northern District of Illinois and on April 18, 1952, the corporation was adjudicated a bankrupt. Included in a list of claims filed against Metropolitan was an item classified as loans from petitioner in the amount of $71,213.18. In his joint income tax return for the year 1951 petitioner claimed $71,213.18 as a business loss with respect to Radio Station WMOR. Respondent disallowed the *216 claimed loss in its entirety and this Court upheld the disallowance. Petitioner was not in the business of operating a radio station. Petitioner was not in the business of making loans. Facts Relating to General Expenses and Other Deductions Claimed for Years 1952-1955 Attached to each of the Teitelbaum and Melnick returns filed by petitioner for the years 1952, 1953, and 1954 are schedules captioned "Expenses" showing various dates, items, and amounts. The total of these amounts was claimed in the professional income schedule as "Other deductions authorized by law" in the respective returns. In redetermining petitioner's income for the taxable years 1952, 1953, and 1954 respondent disallowed certain of the items claimed as deductions in the respective Teitelbaum and Melnick returns for such years and correspondingly increased the taxable income reported in petitioner's respective individual returns. On the Teitelbaum and Melnick return filed by petitioner for the year 1955 the amount of $25,549.15 was claimed as "Other deductions authorized by law" without any further breakdown or itemization. In redetermining petitioner's income for the year 1955 respondent determined *217 what items comprised the deduction claimed, which of the items were not allowable and increased petitioner's taxable income reported in his individual return by the amount of items disallowed. The following schedule shows the items claimed in the schedules attached to the 1952 Teitelbaum and Melnick returns which were disallowed by respondent: Claimed and
Item
Disallowed
Fine Arts Building Expenses
$ 24,000.00
J. Kenneth Edlin
2,000.00
Attorney Robert Cook
500.00 [1]
Hollingshead Motors Car Transpor-
tation - H. Novitsky check # 286
2,100.00
Paul Labriola Services
2,500.00
State of Washington Oil Expense
2,939.34
Samson Curtis Insurance
448.17
Attorney Edward Daly
5,200.00
Nantucket Restaurant Union Dues
870.00
Telephone Company
469.35
Harry Smith Police Union Ex-
penses
1,000.00
Attorney Eugene Bernstein
200.00
Attorney Bernabe Hurado
2,500.00
Sol Blitz
595.00
Estate of Jos. Bergl
1,083.33
Real Estate Taxes
938.17
Patricia Ann Kurey
900.00
Harry Novitsky
3,600.00
U.S. Taxes
1,664.88
Transportation
5,042.89
Hotels
1,345.00
Entertainment
926.25
Donations
2,705.00 [2]
Loss on Hutchison House
1,500.00 [1]
Loss on Oil Deal Kern County,
Cal.
14,600.00
1/2 Prepaid Interest Edison Co.
7,500.00
1951 Carryover Loss
9,771.13
Cab Fares
500.00
Picking Up Clients Checks
2,500.00
Advertising, Special Promotion, etc.
10,000.00
Food re Transportation
1,000.00
5% of Income for Entertainment
4,695.00
Miscellaneous
11.45
$115,604.96
*218 The total deductions claimed in the professional income schedule under item 24 (Other deductions authorized by law) of the Teitelbaum and Melnick return for 1952 aggregate $141,988.50 of which respondent has allowed $26,383.54 ($141,988.50 less $115,604.96). Of the $115,604.96 disallowed (excluding the amounts of $500 and $1,000 conceded by respondent on brief and the $2,705 allowed to petitioner on his 1952 individual return as contributions), the sum of $11,700 represents ordinary and necessary business expenses deductible by petitioner for the taxable year 1952. Petitioner claimed deductions in the professional income schedule under item 24 (Other deductions authorized by law) of the Teitelbaum and Melnick return for 1953 in the amount of $231,888.76. Attached to the 1953 Teitelbaum and Melnick return are six schedules listing approximately 265 items of purported professional expense. After excluding from the schedules claimed theft and farm losses, the items remaining total $249,572.02. The computed total as shown *219 on the return is excessive by the amount of $316.74. In arriving at the $231,888.76 amount claimed, petitioner subtracted from the incorrect total of $249,888.76 ($249,572.02 plus error in addition of $316.74) the amount of $18,000 with the following explanation: Transportation and Personal Expense, and any possible errors, and any innocent or mistaken deductions 10% of total. The following schedule shows the items claimed in the schedules attached to the 1953 Teitelbaum and Melnick return which were disallowed by respondent. Claimed and
Item
Disallowed
Harry Novitsky
$ 2,845.00
Collector of Internal Revenue
341.65
Cash re Expenses Oil Ck.
700.00
Donations
625.00 [1]
Earnest Overstreet Tax Collector
601.57
C. W. Tomilson City Tax Collector
452.80
F. P. Ristine Co. - Loss on Stock
287.09 [1]
Allen Smiley Oil Rentals
321.00
T. T. Hawksworth Oil Expenses
1,965.00
Home Police Protection
250.00
Police Protection
1,050.00
Luther Swanstrom
500.00
Carryover Business Loss
191,265.31
Food re Travel
1,000.00
Loss on Sale of Oklahoma Oil Well
2,000.00
Cash Expenses - re Edgewater
2,000.00
Cash Payments - re Marquis Strike
2,000.00
Restaurants
1,125.29
Transportation
3,997.37
Hotels
5,502.75
Miscellaneous (40 items)
4,697.85
$223,527.68
*220 The total deductions claimed in the professional income schedule under item 24 (Other deductions authorized by law) of the Teitelbaum and Melnick return for 1953 are $231,888.76, of which respondent has allowed $26,044.34 ($231,888.76 less $205,844.42), not considering the $625 allowed to petitioner as a contribution deduction and the $287.09 allowed to petitioner as a short-term capital loss. The $205,844.42 amount mentioned above is arrived at as follows: Items claimed and disallowed
$223,527.68
Plus: Error in addition on return
316.74
$223,844.42
Less: Amount not deducted on re-
turn
18,000.00
$205,844.42 Of the $223,527.68 disallowed by respondent (excluding the amounts of $625 and $287.09 allowed to petitioner on his 1953 individual return), the sum of $6,300 represents ordinary and necessary business expenses deductible by petitioner in the taxable year 1953. The following schedule shows the items claimed in the schedules attached to the 1954 Teitelbaum and Melnick return which were disallowed by respondent: Claimed and
Item
Disallowed
Florida Taxes
$ 652.88 [1]
Florida Interest on Mortgage
534.00
Interest on Loans
231.26
Interest on Mortgage - 6911 S. Eu-
clid
1,020.32 [2]
Real Estate Taxes - 6911 S. Euclid
2,978.80
Bresler Interest
150.00
Elvart Judgment
700.00
De Rosa Expenses - Mexico
350.00
William H. Tate
1,100.00
Koolercoil Loss
425.00
Sanborn Surveyor
125.31
Blackwell, Walker and Gray
192.30
Maddox v. Teitelbaum
2,500.00 [3]
Commission on California Loan
1,250.00
Donations (2 items)
1,025.00 [4]
Restaurants (16 items)
659.46
Hotels (11 items)
537.68
Travel and Transportation (14
items)
1,079.64
John Lopez - Indio, California
2,100.00 n[5]
Miscellaneous (18 items)
1,797.64
$19,409.29
*221 The total deductions claimed in the professional income schedule under item 23 (Other deductions authorized by law) of the Teitelbaum and Melnick return for 1954 are $29,494.80, of which respondent has allowed $10,085.51 ($29,494.80 less $19,409.29), not considering the $1,025 which was allowed to petitioner as a deduction on his individual return. Of the $19,409.29 disallowed by respondent (excluding the amounts conceded by respondent and petitioner and the amount allowed on petitioner's 1954 individual return), the sum of $3,100 represents ordinary and necessary business expenses deductible by petitioner in the taxable year 1954. The following schedule shows the items included in the total deduction "All expenses" claimed in the Teitelbaum and Melnick return for 1955 which were disallowed by respondent: Claimed and
Item
Disallowed
Interest - Irwin Jacobs
$ 847.19 [1]
Real Estate Taxes
1,067.10
Bank Interest - Loans
500.00
Hotels (5 items)
564.86
Travel
118.64
Restaurant
125.00
Indio Date Farm (14 items)
11,172.00
Miscellaneous (5 items)
224.00
$14,618.79
*222 The total deductions claimed in the professional income schedule of the Teitelbaum and Melnick return for 1955 are $25,549.12, of which respondent has allowed $10,930.36 ($25,549.15 less $10,930.36), not considering the $847.19 item conceded by respondent on brief. Of the $14,618.79 disallowed by respondent (excluding the $847.19 conceded by respondent), the sum of $800 represents ordinary and necessary business expenses deductible by petitioner for the taxable year 1955. Petitioner did not file a declaration of estimated tax for the years 1952, 1953, and 1954. In his notice of deficiency the respondent determined that petitioner is liable for an addition to tax for failure to file a declaration of tax for such years. Opinion The issues here involved pose essentially questions of fact. Except for the two new matters raised by respondent in his amendments to the answer dealing specifically with the long-term capital gain on the sale of the Fine Arts Building and the claimed deduction in 1952 with respect to interest paid on the income tax deficiencies of Esther Melnick Teitelbaum for prior years, the burden of proof on all other issues *223 is upon the petitioner. The record he has made before us is highly confusing. The evidence upon which he relies is often unconvincing and at times contradictory. In some instances his positions conflict with the evidence and the stipulation of facts. In view of the unsatisfactory state of the record and the minimal assistance given us by petitioner, who did not request specific findings of fact, we have endeavored to do the best we can with the materials at hand, bearing in mind the petitioner's burden of proof on most of the issues. We are unable to find, as petitioner urges us to do, that the deficiencies were made arbitrarily. See Welch v. Helvering, 290 U.S. 111 (1933). In fact, we think respondent's attorneys have made a sincere attempt to give the petitioner the benefit of several doubtful items through concessions made before and after the trial of this case. And we in turn have included in our Findings all pertinent facts which can be found from competent evidence in the record. 1. Statute of Limitations. In Docket No. 88322 petitioner assigned error to respondent's determination by claiming that assessment of the deficiencies set out in the notice of deficiency *224 dated June 27, 1960, is barred by the statute of limitations. However, the evidence shows that prior to the expiration of the normal 3 year period of the statute of limitations with respect to each of the years 1952, 1953, 1954, and 1955, petitioner and respondent executed consent agreements extending the period within which an assessment of a deficiency could be made, and thereafter timely executed a series of such agreements extending the period of limitations upon assessment to June 30, 1960, for each of these years. The statutory notice of deficiency covering the years 1952, 1953, 1954, and 1955 was mailed by respondent on June 27, 1960. Since the notice of deficiency was mailed prior to the expiration of the period of limitations on assessment, as extended by the parties, the notice was timely. Prior to the trial respondent filed an amendment to answer in Docket No. 88322 in which he claimed increased deficiencies for the year 1952. In his reply to respondent's amendment to answer, at the hearing and on brief petitioner contended that assessment of the asserted increased deficiencies is barred by the statute of limitations since the claim constitutes a new cause of action. Respondent *225 also applied for further increased deficiencies at the trial. A claim for an increased deficiency may be made after the statute of limitations has run against additional assessments for the year in question if the original notice of deficiency was mailed before the statute had run and a petition based thereon is filed within the time allowed by statute. See W. H. Weaver, 25 T.C. 1067 (1956); and Ticker Publishing Company, 46 B.T.A. 399 (1942). Therefore, respondent's claims for increased deficiencies were also timely. 2. Alleged Teitelbaum and Melnick Partnership. Respondent determined in his notices of deficiencies that no partnership existed between petitioner and Esther Melnick for the years 1952 through 1956. Petitioner assigned error to this determination. Respondent made adjustments to purported partnership returns prepared and filed by petitioner under the name of Teitelbaum and Melnick and charged the resulting income to petitioner. The only adjustment to petitioner's taxable income for the year 1956 is an increase in the amount of $6,000, which is the *226 amount of income disclosed on the 1956 Teitelbaum and Melnick return as distributable to Esther Melnick. The burden of proof as to this issue is upon the petitioner. Rule 32, Rules of Practice of the Tax Court of the United States. At the trial petitioner testified that he and Esther Melnick engaged as equal partners in the practice of law in Chicago, Illinois, during the years 1952 through 1956. Esther Melnick did not testify as a witness at the trial. The evidence shows that petitioner divorced Esther Melnick in March 1952, and immediately thereafter married his present wife, Shyrl Teitelbaum. At the time of the divorce petitioner and Esther Melnick had four living children, the oldest of which was 15 years of age. Throughout the years 1952 through 1956 Esther Melnick resided in California with the children. When questioned as to Esther Melnick's activities in the alleged partnership, petitioner stated that she participated in maintaining the California date farm and keeping the household together. Petitioner's testimony was scanty, vague, and unconvincing as to any legal services performed *227 by Esther Melnick in the alleged partnership during the years in controversy. In attempting to show the existence of a partnership, the petitioner produced a bank book in the name of Esther Melnick showing certain deposits for 1952 and also some checks drawn in 1953 by Esther Melnick on a Chicago bank account in the name of Teitelbaum and Melnick. These documents are subject to varying interpretations and add little, if any, support to petitioner's assertion that a bona fide partnership existed during such years. The same thing can be said about Exhibit 33, which consists of three certificates of discharge of Federal tax liens against Abraham and Esther Melnick Teitelbaum for individual income tax liabilities for the years 1944 through 1948. This exhibit does not show, as contended by petitioner, that a partnership paid taxes on income from a partnership. The main thrust of petitioner's argument with respect to the partnership issue assumes facts for which there is no support in the record. He, not Esther Melnick, opened a bank account and filed tax returns in the name of Teitelbaum and Melnick. There is no evidence that Esther Melnick was even aware of what petitioner was doing. *228 We are persuaded by the meager evidence offered that the alleged partnership merely provided the petitioner with a device, or at least a convenient vehicle, for splitting his income. Likewise, the petitioner's attempt to hinge his partnership argument on the joint ownership of the California date ranch and its operation is equally without merit because, as we shall point out later in this opinion, the date farm did not constitute the operation of a business for profit. Petitioner further contends that since our prior decision [1] held that the partnership of Teitelbaum and Melnick existed for the years 1944 through 1951 and that he was twice indicted as a partner of Teitelbaum and Melnick for the years 1946 and 1947 and for 1950 and 1951, such proceedings are res judicata, or respondent is collaterally estopped, as to the existence of a valid partnership between himself and Esther Melnick for the years (1952-1956) now before us. There is no merit to petitioner's position. The doctrines of res judicata and collateral estoppel are clearly not applicable here. The general rule of res judicata *229 applies to repetitious suits involving the same cause of action. It is well established that each tax year gives rise to a new cause of action. Commissioner v. Sunnen, 333 U.S. 591 (1948). Moreover, it does not necessarily follow that res judicata in the strict sense is applicable merely where the same tax year is involved in two suits. Cf. Helvering v. Mitchell, 303 U.S. 391 (1938). As to collateral estoppel, the Supreme Court in Commissioner v. Sunnen, supra, stated: * * * It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * * And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. While the issue in this case is similar to that presented in the prior case in this Court and the "applicable legal rules remain unchanged," the facts necessary to establish a partnership *230 are far different from those present in the case involving the prior years. Finally, the recognition of partnership existence depends primarily upon the intent of the parties which can be gleaned from all the facts and circumstances. Commissioner v. Culbertson, 337 U.S. 733 (1949). We think the record as a whole fails to support the petitioner's claim that a partnership existed between him and Esther Melnick during the years 1952 through 1956. The evidence is insufficient to overcome the presumptive correctness of the respondent's determination. Accordingly, we sustain the respondent on this issue. 3. Date Ranch Losses. On the Teitelbaum and Melnick returns for the years 1952 and 1953 losses allegedly sustained in the operation of the California date ranch were claimed as deductions from income. There were no schedules of farm income and expenses attached to the returns. The amount of deduction claimed on the 1953 return is shown as estimated. Respondent determined that petitioner did not operate the farm as a business for profit and, therefore, the losses were not deductible *231 as business losses. Petitioner contends that the losses claimed were properly deductible and that the date ranch was a business. We agree with the respondent. The property in question was located in the vicinity of Palm Springs, California, and consisted of a main house, guest house, swimming pool, pool house, servants' house, etc., occupying about 1 1/2 of the total 11 acres; the remainder being devoted to date trees and some grapefruit trees. The property was acquired by petitioner and Esther Melnick in 1948 and occupied by Esther Melnick and her children. The property was acquired for a total consideration of $127,372.09 of which $21,000 was allocable to land, $17,500 to date trees and related improvements, and at least $88,872.09 to the residence and related improvements. The deductibility of losses sustained from the operation of the date farm in 1949, 1950, and 1951 was previously considered by this Court and decided against the petitioner. See Abraham Teitelbaum, supra, where we said: Petitioner kept few records. At the trial he submitted a mass of unsorted cancelled bills. From the evidence submitted, it is clear that petitioner did not consider the date *232 farming as a separate operation from the maintenance of comfortable living quarters. No effort had been made accountingwise to segregate the expenses of the residential facilities, which were substantial, from those of the farming operation. Moreover, petitioner made no effort to put the farming on a paying basis. See Dean Babbitt, 23 T.C. 850, 866 (1955). He spent little time on the Date Farm and after separating from his wife in 1949, did not exercise managerial responsibility. There is no evidence concerning Melnick's efforts, if any, with respect to the Date Farm. The petitioner has not shown in this proceeding that the situation has changed in any material respect as to the years now before us. The determination of whether a taxpayer is engaged in a business is made upon all the facts and circumstances of each case. Higgins v. Commissioner, 312 U.S. 212 (1941); and International Trading Co., v. Commissioner, 275 F. 2d 578 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court. One fact which is essential to a finding that the taxpayer *233 is engaged in a business is the existence of a profit motive. American Properties, Inc., 28 T.C. 1100 (1957), affd. 262 F. 2d 150 (C.A. 9, 1958). In the instant case we find that the requisite profit motive was absent. Petitioner never had a profitable year from the operation of the date farm, having lost money in 1948 and all subsequent years. And it is glaringly apparent from the evidence that petitioner had no expectation of making a profit therefrom. The purchase of the property was intended as a residence for Esther Melnick and the children. The mere existence of a few acres of date trees on the grounds was only an incidental consideration to the purchase of the property. John Randolph Hopkins, 15 T.C. 160 (1950). Moreover, the petitioner has failed to prove that the claimed losses were actually sustained. Thus we hold for respondent on this issue. 4. Alleged Theft Losses. On the 1952 Teitelbaum and Melnick return petitioner claimed $50,000 loss caused by an alleged armed robbery of the residence of his wife, Shyrl Teitelbaum, in Miami Beach, Florida. The deduction was disallowed in its entirety by respondent in the notice of deficiency. *234 The evidence adduced at the trial does not support petitioner's claimed deduction. Petitioner testified that he was in Chicago, Illinois, at the time of the robbery; and that the loss included $30,000 in cash, a mink coat, diamond choker, aquamarine ring, and a camera. But petitioner offered no evidence with respect to value of the latter items at the time of the robbery. Neither petitioner's wife, Shyrl, nor any other person who was in or near the house at the time of the robbery, was called to testify as to the items taken or their value. Petitioner admitted that he did not report the $30,000 cash item to the Miami Beach police. Indeed, the only items reported to the Miami Beach police as being stolen were two fur pieces. Later the petitioner requested the Miami Beach police to break off their investigation of the robbery. On the 1953 Teitelbaum and Melnick return petitioner claimed a $3,000 loss caused by an alleged burglary of his and his wife's residence in Chicago. This item was disallowed in full by the respondent. The evidence offered by petitioner consisted of his own testimony, a Chicago police report covering the burglary and the testimony of Joseph Morris, Deputy Superintendent *235 of the Chicago Police Department. The police report lists certain household and clothing articles as being taken but does not reflect their cost or fair market value at the time of alleged loss. The report discloses, however, that the property described as being taken was insured. Petitioner attempted to substantiate the validity of his claim through the testimony of Joseph Morris, who stated that the only knowledge he had of the purported loss is what petitioner told him. Section 23(e)(3), Internal Revenue Code of 1939, provides that in computing net income of an individual there shall be allowed as a deduction losses from theft of property not connected with trade or business if the loss was sustained during the taxable year and not compensated for by insurance or otherwise. To sustain his burden of proof, the petitioner must not only show that a theft has occurred, but he must also produce evidence from which the fair market value of the property at the time of loss - not in excess of cost reduced by insurance received - may be ascertained. Cf. Helvering v. Owens, 305 U.S. 468 (1939). *236 The record is devoid of any evidence as to the cost or other basis of items stolen; nor is there any documentary evidence whatsoever to support the claim that $30,000 in cash was taken. We are therefore constrained to hold that the petitioner has failed to establish the essential element of cost of the valuables and loss of the cash. Hence no part of the claimed theft loss deduction of $50,000 for 1952 can be sustained. With respect to the $3,000 theft loss claimed for the year 1953, the petitioner again failed to offer any proof as to the necessary element of cost or market value of the property. Even though he established through the police report that a burglary occurred, the report itself contains no statement as to value and reflects that the property taken was insured. Consequently, the issue must be decided in favor of the respondent because of petitioner's failure to carry his burden of proof. 5. Understated Gross Professional Receipts. For the years 1952, 1954, and 1955 respondent increased gross professional receipts as reported by petitioner on the Teitelbaum and Melnick returns in the respective amounts of $13,077.35, $6,250, and $2,500. Error was assigned by the petitioner *237 only with respect to the adjustments for 1952 and 1954. Respondent, in his amendment to answer, conceded error with respect to $10,000 of the 1952 increase. Petitioner offered no evidence with respect to the remaining $3,077.35 adjustment for 1952 or any of the increases for 1954. We must therefore conclude that petitioner has either abandoned these items or, if not abandoned, he has failed to disprove the correctness of respondent's determination. 6. Long-term Capital Gain on Sale of Fine Arts Building. In the statutory notice of deficiency respondent determined that petitioner realized long-term capital gain from the sale of his one-half interest in the Teitelbaum and Simon partnership (Fine Arts Building) in the amount of $32,016.02. Petitioner reported the sale of his interest in the Fine Arts Building on the 1952 Teitelbaum and Melnick return (under item 11) as "1/2 Int. Fine Arts (1/2 Net Gain) - $13,381.74." The manner in which petitioner arrived at the reported amount is not disclosed by the record. In the statutory notice of deficiency respondent adjusted the $13,381.74 to zero. By his amendment to answer respondent modified his original determination on the sale of *238 the Fine Arts Building and recomputed the amount of long-term gain realized by petitioner to be $375,623.28, as follows: Agreed selling price
$300,000.00
Additional payment by purchaser
35,083.00
Mortgage liability on property
294,000.00
Total amount realized
$629,083.00
Less: Basis
253,459.72
Long-term capital gain
$375,623.28 Increased deficiencies in tax were claimed by respondent as a result of the increased gain. In the amendment to his answer respondent conceded that the $14,524.26 prorated share of 1952 real estate taxes that was withheld from the agreed selling price and paid by the buyer, treated in the notice of deficiency as a reduction of selling price, properly constitutes an ordinary deduction. In addition to the $14,524.26 conceded and allowed to petitioner in the amendment to answer, respondent also conceded and allowed as deductions certain other ordinary and necessary expenses incurred in connection with the sale of the property, as follows: Interest
$914.95
Social security taxes
546.27
Utility taxes
43.83
Trustee fees
140.00 Thus the amount of the claimed increased long-term capital gain results from the inclusion *239 in the amount realized by petitioner of a mortgage liability to which the property was subject in the amount of $294,000 and an additional payment by the purchaser in the amount of $35,083. On the Teitelbaum and Simon partnership return for the period January 1, 1952, through July 31, 1952, the cost of the Fine Arts building and improvements, including electrical conversion, is shown as $270,234.87, exclusive of land. Prior depreciation is shown as $48,344.81, leaving the amount of $221,890.06 remaining cost to be recovered. Depreciation for the 6-month period is claimed in the amount of $7,376.72 leaving an adjusted basis of building and improvements as of July 31, 1952, of $214,513.34. Respondent determined the unrecovered cost as of January 1, 1952, to be $223,372.55 and allowed depreciation in the amount of $8,913.42 rather than $7,376.72 as claimed, which established the adjusted basis in building and improvements as of July 31, 1952, of $214,459.13. The allocated original cost of the land is $292,460.32. Therefore, petitioner's adjusted basis on the Fine Arts property at the time of sale was $253,459.72 which represents one-half of the total adjusted basis of the entire property *240 (adjusted basis of building $214,459.13 plus land $292,460.32 = $506,919.45). The evidence shows that petitioner realized at least the amount of $334,083 on the sale of his one-half interest in the Fine Arts Building without considering the amount of the stated outstanding mortgage to which the property was subject at the time of sale. Certain payments, refunds, and prorations of various items were made between the parties, resulting in an overpayment by Arnold Schwartz, the purchaser, of $35,083. This overpayment is includable in the amount realized [2] by petitioner on the sale because it was received by him under a claim of right without restriction in respect of its use or disposition. North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932). This is true even though petitioner was subsequently adjudged liable to restore the $35,083 to Schwartz. United State v. Lewis, 340 U.S. 590 (1951). *241 The evidence shows that at the time of the sale of petitioner's interest in the Fine Arts Building the property was subject to a mortgage held by the Connecticut Mutual Life Insurance Company, Hartford, Connecticut. The actual balance of the mortgage as of July 31, 1952, was $630,000, but petitioner at that time quoted the mortgage to Schwartz as having a balance of $588,000. The $42,000 excess of the actual over the quoted mortgage was taken into consideration by the parties when the sale was closed. Schwartz purchased petitioner's interest in the Fine Arts Building subject to one-half of the stated outstanding mortgage of $588,000, which one-half is chargeable to petitioner as representing part of the amount he realized on the sale. Crane v. Commissioner, 331 U.S. 1 (1947). At the trial and on brief petitioner contends that he did not sell real estate but rather certificates of beneficial interest in a land trust which are construed under the law of the State of Illinois to be personal property. In his reply to respondent's amendment to answer petitioner asserts that Schwartz did not assume the first mortgage on the Fine Arts Building as a part of the sale transaction. *242 But these contentions are not fatal to respondent's adjustment. Whether the property sold is construed as personalty or real estate is immaterial. While technically Schwartz may not have assumed one-half of the outstanding mortgage on the property at the time of his acquisition of petitioner's one-half interest, he did purchase the one-half interest subject to the mortgage. In Crane case, supra, the Supreme Court held that on the sale of property a mortgage debt was includable in the "amount realized" as "property" within the meaning of sections 111(a) and (b) of the Revenue Act of 1938 (identical with sections 111(a) and (b) of the Internal Revenue Code of 1939), even though the seller was not personally liable for the mortgage debt. The Supreme Court stated at page 14: * * * We are rather concerned with the reality that an owner of property, mortgaged at a figure less than that at which the property will sell, must and will treat the conditions of the mortgage exactly as if they were his personal obligations. Petitioner's contention that the mortgage should not be included as a part *243 of the "amount realized" is inconsistent with the claimed deductions for depreciation on the Teitelbaum and Simon partnership returns. On the partnership returns depreciation was claimed on the Fine Arts Building on the basis of the mortgage as well as the partners' equity in the property. It was to petitioner's economic interest to see to it that the payments on the mortgage were made. As a matter of economic reality, the purchaser taking subject to the mortgage must also see to it that the mortgage payments are made in order to protect his equity in the property. It is respondent's position that the principles enunciated in the Crane case are dispositive of the mortgage aspects of this issue in that one-half of the stated outstanding mortgage debt constitutes a part of the "amount realized" on the sale within the meaning of sections 111(a) and (b), Internal Revenue Code of 1939. We agree and therefore hold for the respondent on this issue. 7. Payments of Interest Made by Petitioner on Income Tax Deficiencies of Esther Melnick Teitelbaum for Prior Years. On the 1952 Teitelbaum and Melnick return petitioner claimed an interest deduction in the amount of $59,213.41. Of that amount *244 at least $30,525.85 represented interest and accrued interest which was paid on Federal income tax deficiencies of Esther Melnick Teitelbaum, petitioner's former wife, for the years 1944, 1945, 1946, and 1947. Petitioner did not file joint Federal tax returns with Esther Melnick for the years 1944, 1945, 1946, and 1947 and, consequently; was not liable for her interest indebtedness. Section 23(b), Internal Revenue Code of 1939, provides for the allowance of a deduction for all interest paid within the taxable year on indebtedness. The interest must relate to a genuine indebtedness paid by the taxpayer in discharge of his own liability. Payments made on obligations of others do not meet the statutory requirements. Arcade Realty Co., 35 T.C. 256 (1960). Since the payment does not effect the discharge of petitioner's own liability but rather the obligations of another, it follows that petitioner is entitled to deduct the $30,525.85. Therefore, we sustain the respondent on this issue. 8. Understatement of Distributive Share of Teitelbaum and Simon Partnership Income for 1952. *245 The respondent made two adjustments to the income of the Teitelbaum and Simon partnership which increased income by $79,671.62 and he made one adjustment allowing additional depreciation of $1,536.70. The net effect of these adjustments was to increase the partnership income by $78,224.92 one-half of which, or $39,112.46, is distributable to the petitioner. The adjustments which increased income were (1) interest in the amount of $2,362.50, and (2) taxes in the amount of $77,399.12, both of which represent amounts accrued on the books of the partnership. The Teitelbaum and Simon partnership reports its income on the cash basis. Since petitioner offered no evidence with respect to these items, we sustain respondent's adjustments. 9. Radio Station WMOR. Petitioner raised in an amendment to his petition the issue as to whether he is entitled to a deduction in 1952 for a claimed business loss in connection with Radio Station WMOR. However, in his amended petition he does specify what amount is claimed as a loss. Petitioner claimed a deduction of $71,213.18 in his joint income tax return for the year 1951 as a business loss with respect to alleged advances to the radio station. *246 Respondent disallowed the deduction in its entirety and the determination was subsequently upheld by this Court in Abraham Teitelbaum, supra. We found that petitioner had advanced $48,289.83 to the radio station but had deducted $20,901.94 of that amount as expenses on the Teitelbaum and Melnick returns for 1950 and 1951. Respondent contends that petitioner has failed to establish that he sustained a loss in 1952 or, if established, that it would be deductible as a business deduction. The record shows that petitioner purchased the corporation's stock in 1951 as a favor for certain of his friends. At the time of purchase he knew the corporation was either insolvent or becoming insolvent. The record does not show whether petitioner recovered his advances or any portion thereof. But, in any event, the petitioner would not be entitled to claim the loss as a business bad debt deduction under section 23(k)(1) but rather as nonbusiness bad debt under section 23(k)(4). The business of the corporation was not petitioner's business and making of loans to corporations was not a regular business of petitioner. See Whipple v. Commissioner, 373 U.S. 193 (1963). Contrary *247 to petitioner's assertion, this Court did not hold in the prior Teitelbaum case that such loss, if any, should be allowed in 1952 rather than 1951. Therefore, we hold that the petitioner did not sustain any loss in 1952 with respect to Radio Station WMOR. 10. General Expenses and Other Deductions. The evidence offered by petitioner with respect to general expenses and other deductions claimed for the years 1952, 1953, 1954, and 1955 is, in many instances, insufficient, incomptent, and unsatisfactory. As to some of the claimed expenses the petitioner has produced no evidence and as to others the evidence possesses certain inherent weaknesess. It would unduly extend this opinion and serve no useful purpose to comment on each item separately. However, we have selected a few examples to illustrate our point. They are: (1) At the trial petitioner offered evidence that the $2,500 allegedly paid to Paul (Needles) Labriola in 1952 represented extortion payments. We have held that extortion payments are not deductible as ordinary and necessary business expenses. Samuel Towers, 24 T.C. 199 (1955), *248 affirmed sub nom. Bonney v. Commissioner, 247 F. 2d 237 (C.A. 2, 1957), certiorari denied 355 U.S. 923 (1957). (2) The real estate tax item of $938.17 was claimed by petitioner to represent taxes paid in 1952 on a home in Miami, Florida, ownership of which was in the name of his wife, Shyrl. Since petitioner filed an individual return, he is not entitled to deduct taxes paid on his spouse's property. Eugene W. Small, 27 B.T.A. 1219 (1933). The home at 6911 S. Euclid Street, Chicago, was also owned by Shyrl and, therefore, the taxes paid by petitioner are not deductible on his individual return for 1954. (3) With respect to the $14,600 item for 1952 relating to Kern County oil deal, the evidence shows that petitioner's wife Shyrl instituted suit to recover a personal investment. Petitioner claimed that Shyrl was only a nominee, but he did not call her as a witness. Petitioner failed to prove that he sustained a deductible loss on the Kern County oil deal. (4) Petitioner offered no proof of payments totaling $10,000 for advertising and special promotion, which are indeed large and strange expenses for one engaged principally in the practice *249 of law. (5) At the trial petitioner offered no evidence to support a carryover business loss of $191,265.31 for 1953. Presumably he was attempting to carryover certain losses previously claimed for the years 1949, 1950, and 1951 which were disallowed in our prior decision covering those years. Abraham Teitelbaum, supra. (6) The items claimed for the operation of the California date farm in 1955 are not allowable in view of our holding herein that the farm was not a business and was not operated for profit. Despite the paucity of evidence with respect to the vast majority of the general business expenses claimed by petitioner and his frequent failure to show that such expenses were proximately related to his business, we nonetheless think it is incumbent on us to apply the familiar Cohan rule (39 F. 2d 540, 544). Using our best judgment in making "as close an approximation" as we can, and bearing heavily upon the petitioner "whose inexactitude is of his own making," we have determined in our Findings of Fact that only the following amounts of "general expenses" represent deductible ordinary and necessary business expenses: $11,700 for 1952; $6,300 *250 for 1953; $3,100 for 1954; and $800 for 1955. 11. Additions for Failure to File Estimated Tax Returns. Respondent determined additions to tax under the provisions of section 294(d)(1)(A), Internal Revenue Code of 1939, for the years 1952, 1953, and 1954. Petitioner has offered no proof with respect to this issue. We therefore sustain respondent's determination. Decisions will be entered under Rule 50. Footnotes
1. Conceded by respondent on brief. (Loss on Hutchison House to extent of $1,000.) SEC. 111. [I.R.C. 1939] DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS. (a) Computation of Gain or Loss. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized. (b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. SEC. 113. [I.R.C. 1939] ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(b) Adjusted Basis. - The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. (1) General rule. - Proper adjustment in respect of the property shall in all cases be made - (A) For expenditures, receipts, losses, or other items, properly chargeable to capital account, but no such adjustment shall be made for taxes or other carrying charges, or for expenditures described in section 23(bb), for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years; (B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount - (i) allowed as deductions in computing net income under this chapter or prior income tax laws, and
[2]↩ Allowed to petitioner on his 1952 individual return as contributions.
1. Allowed to petitioner on his 1953 individual return.↩
1. Respondent conceded on brief that $268.69 of this item is allowable. [2] Conceded by respondent on brief. ↩
3. Conceded by petitioner at hearing. ↩
4. Allowed to petitioner on his 1954 individual return. ↩
5. Claimed in return as $3,600.↩
1. Conceded by respondent on brief.↩
1. See Abraham Teitelbaum, T.C. Memo. 1960-11, affd. 294 F. 2d 541↩ (C.A. 7, 1961).